**EXHIBIT B**

INITIAL DECISION RELEASE NO. 875
ADMINISTRATIVE PROCEEDING
File No. 3-16540

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

| In the Matter of<br><br>STEPHEN L. KIRKLAND | INITIAL DECISION<br>September 2, 2015 |
|---|---|

APPEARANCES: Edward G. Sullivan for the Division of Enforcement, Securities and Exchange Commission

Stephen L. Kirkland, *pro se*

BEFORE: James E. Grimes, Administrative Law Judge

## Summary

In this Initial Decision, I grant the Division of Enforcement's motion for summary disposition. Respondent Stephen L. Kirkland is permanently barred from associating with an investment adviser, broker, dealer, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization.

## Procedural Background

The Commission initiated this proceeding in May 2015, by issuing an Order Instituting Proceedings (OIP). As authority, the OIP relies on Section 203(f) of the Investment Advisers Act of 1940. OIP at 1; *see* 15 U.S.C. § 80b-3(f). In the OIP, the Division alleges that Kirkland "has a degree in [ophthalmology]," claims to have been "an optician and an independent insurance agent," and "holds himself out as an investment consultant," although he "has never been associated with any entity registered with the Commission." OIP at 1. Continuing, the Division claims that "[i]n conjunction with the sale of securities, Kirkland advised investors to use Westover Energy Trading Partners, LLC . . . as an investment adviser." *Id.* The Division also claims that he "acted as an investment adviser" "[f]rom late 2008 through late 2010." *Id*.

The Division further alleges that in April 2015, the United States District Court for the Northern District of Georgia entered a permanent injunction by consent against Kirkland. OIP at 2. According to the allegations in the OIP, the district court enjoined Kirkland from committing future violations of Section 10(b) of the Securities Exchange Act of 1934, Exchange Act Rule

10b-5, and Section 206(1) and (2) of the Advisers Act. The Division asserts that the Commission's injunctive complaint:

> alleged that from late 2008 through late 2010, Kirkland and The Kirkland Organization, Inc. ("TKO") repeatedly made false and misleading statements to investors and potential investors in the United States and abroad in connection with the sale of securities, including but not limited to: (a) if they invested with Kirkland and TKO through a managed account at Westover, there would be no risk of losing their principal; (b) they would earn 2% to 3% per month; (c) a specified New York real estate developer/owner was a manager of Westover; and (d) the New York real estate developer/owner's substantial wealth would be used to indemnify investors against loss. Investors in the United States and England invested at least $800,000 with Kirkland and TKO based upon those false representations.

*Id*.

Following service of the OIP, Kirkland filed an Answer to the OIP. In his Answer, he admits that the district court entered an injunction by consent and admits that the OIP accurately describes the allegations in the Commission's injunctive complaint. Answer at 1. Kirkland says that his degree is in ophthalmic dispensing and that he has "been employed as both an Optician and . . . a Life and Health Insurance Agent." *Id*.

I held a prehearing conference on June 22, 2015. Counsel for the Division of Enforcement and Kirkland, appearing *pro se*, attended the conference. During the conference, I granted the Division leave to move for summary disposition. Prehearing Conference Transcript at 12-13; *see Stephen L. Kirkland*, Admin. Proc. Rulings Release No. 2840, 2015 SEC LEXIS 2501 (June 22, 2015).

The Division subsequently moved for summary disposition. Its motion is supported by three exhibits, designated as exhibits A through C.[1] Kirkland has not filed an opposition to the Division's motion.

The findings and conclusions in this Initial Decision are based on the record and on facts officially noticed under Rule 323. *See* 17 C.F.R. § 201.323. Consistent with Commission precedent, I have relied on the factual allegations contained in the Commission's injunctive complaint. *See Marshall E. Melton*, Advisers Act Release No. 2151, 2003 SEC LEXIS 1767, at *28-29 (July 25, 2003) ("if the Commission institutes an administrative proceeding . . . based on an injunction to which [a respondent] consented" the respondent "may not dispute the factual

---

[1] Exhibit A is the district court's order of permanent injunction. Exhibit B is Kirkland's signed consent to the entry of the injunction. Exhibit C is the Commission's injunctive complaint. Under Rule 323, I take official notice of the district court proceedings and record, including these documents. *See* 17 C.F.R. § 201.323.

allegations of the injunctive complaint in the administrative proceeding"); Ex. B at 5. I have applied preponderance of the evidence as the standard of proof. *See Steadman v. SEC*, 450 U.S. 91, 101-04 (1981).

## Findings of Fact

Kirkland, who has a degree in ophthalmology and has claimed to be an optician and insurance agent, "holds himself out as an investment consultant" even though he "has never been associated with any entity registered with the Commission." Ex. C at 3-4.

Westover Energy Trading Partners, LLC, is a Delaware limited liability company. Ex. C at 4. Its principal place of business is in New York City. *Id*. Westover purported to trade "stock index funds and commodities while guaranteeing investors that they had no risk of loss." *Id*. It was not, and has never been, "registered with the Commission or any state securities[] agency." *Id*. In 2013, the Alabama Securities Commission issued Westover a cease-and-desist order "for offering unregistered investment contracts similar to the investments identified in [the Commission's] Complaint." *Id*. at 4-5.

The Kirkland Organization, Inc., described in the injunctive complaint and here as "TKO," was a for-profit corporation organized in Georgia in 1992 by Kirkland's father, Thomas W. Kirkland. Ex. C at 4. For most of its existence, TKO did nothing and had no revenue. *Id*. Neither Kirkland nor his father registered it with the Commission or any state securities agency. *Id*. Between 2005 and 2010, however, Thomas W. Kirkland used TKO to conduct what the complaint euphemistically alleged were "educational seminars involving identity theft or as an investment club." *Id*. In 2011, TKO was "administratively dissolved." *Id.*

During the latter part of 2008, TKO and Kirkland began soliciting investors for a program supposedly run by Westover. Ex. C at 5. By this point, Kirkland "complete[ly] control[led] . . . TKO with respect to" the Westover program. *Id*. at 6. Kirkland told potential investors that Westover traded securities listed in the United States and investments would principally be placed in "index funds, exchange traded funds, and commodities funds." *Id*. at 5. He also told some potential investors that their return would range between two and three percent per month. *Id*. Additionally, Kirkland said "that TKO would reimburse investors for losses up to $5,000 incurred in a single trading day and that Westover would reimburse them for any losses that exceeded $5,000 on any trading day." *Id*. These representations were false. *Id*. at 1-2, 6.

Kirkland advanced his scheme by preparing false documents. He gave some potential investors documents that reflected that their investments "would be further protected by 'the substantial credit worthiness of [Westover's] principals.'" Ex. C at 5. In the documents, Kirkland included the name and biography of a "New York real estate developer/owner and identified him as the leader of the principals of Westover." *Id*. According to the false documents, this developer/owner "was 'the most visible' of [Westover's] three managers." *Id.* Kirkland said that this person "'impart[ed] his knowledge and expertise and lend[ed] his financial support, as well as the benefit of his numerous real estate industry and financial market connections.'" *Id*. at 5-6.

As it turned out, the developer/owner was a former Westover client but was not one of its principals. Ex. C. at 6. That person was also not affiliated with Kirkland or TKO. *Id*.

By the end of 2010, Kirkland and TKO had convinced ten investors in the United States and Great Britain to invest at least $800,000. Ex. C at 6. Although some of the investors have demanded that Kirkland and TKO return their investments, Kirkland has not returned funds to investors and has instead ignored their requests. *Id*. at 2, 6.

In September 2013, the Commission filed an injunctive complaint against Kirkland in the Northern District of Georgia. *See* Ex. C. Kirkland subsequently consented to the entry of a permanent injunction. Ex. B. Specifically, he consented to an order that enjoined him from violating Section 10(b) of the Exchange Act, Exchange Act Rule 10b-5, and Section 206(1) and (2) of the Advisers Act. *Id*. at 2.

In April 2015, the district court entered a permanent injunction enjoining him from violating the above-noted provisions. Ex. A at 2-4. In its order, the court held that although disgorgement was "legally appropriate," because the Commission had "no evidence that Kirkland profited from [his] fraud," the court would not order disgorgement. *Id*. at 4.

## Conclusions of Law

### *A. Summary Disposition Standard*

Rule of Practice 250 governs motions for summary disposition. *See* 17 C.F.R. § 201.250. An administrative law judge "may grant [a] motion for summary disposition if there is no genuine issue with regard to any material fact and the party making the motion is entitled to a summary disposition as a matter of law." 17 C.F.R. § 201.250(b). "The facts of the pleadings of the party against whom the motion is made shall be taken as true, except as modified by stipulations or admissions made by that party, by uncontested affidavits, or by facts officially noted pursuant to Rule 323." 17 C.F.R. § 201.250(a). In order "to survive a motion for summary disposition, the non-moving party must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Gary M. Kornman*, Exchange Act Release No. 59403, 2009 SEC LEXIS 367, at *21 n.24 (Feb. 13, 2009) (quoting *Jeffrey L. Gibson*, Exchange Act Release No. 57266, 2008 SEC LEXIS 236, at *22 n.26 (Feb. 4, 2008)). Rather, the non-moving party "must present specific facts showing a genuine issue of material fact for resolution at a hearing." *Daniel Imperato*, Exchange Act Release No. 74596, 2015 SEC LEXIS 1377, at *23 (Mar. 27, 2015).

As a practical matter, in cases where the Division files a motion for summary disposition but the respondent does not correspondingly file his own affirmative motion for summary disposition, an administrative law judge has two choices. The administrative law judge may either grant the Division's motion or proceed to a hearing. *S.W. Hatfield, CPA*, Exchange Act Release No. 73763, 2014 SEC LEXIS 4691, at *9-10 (Dec. 5, 2014). The Commission has repeatedly held, however, that summary disposition is generally appropriate in "follow-on" proceedings—administrative proceedings instituted following a conviction or entry of an injunction—where the only real issue involves the determination of the appropriate sanction.

*Daniel Imperato*, 2015 SEC LEXIS 1377, at *8 n.16. Summary disposition is appropriate here because the only issue is whether Kirkland's conduct warrants imposition of the bars the Division seeks.

*B. A full collateral bar is warranted as a result of Kirkland's misconduct.*

Section 203(f) of the Advisers Act gives the Commission authority to impose a collateral bar[2] against Kirkland if, among other things, (1) he was associated with an investment adviser; (2) he "willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934," or the Advisers Act; and (3) imposing a bar is in the public interest. 15 U.S.C. § 80b-3(e)(5), (f).

The first factor is met. Kirkland and TKO acted as investment advisers from late 2008 through late 2010. Ex. C at 8; *see Anthony Fields*, *CPA*, Securities Act Release No. 9727, 2015 SEC LEXIS 662, at *60-61 (Feb. 20, 2015) (holding that because "Fields admitted that he controlled [an investment advisory firm] and was solely responsible for everything that [it] did and said," he was an investment adviser). The second factor is also met. As the evidence and the above findings of fact reflect, Kirkland willfully violated provisions of the Exchange Act and the Advisers Act.[3] *See* Ex. C at 8-9.

With respect to the third factor, whether imposition of a collateral bar would be in the public interest, I must consider the public interest factors set forth in *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979), *aff'd on other grounds*, 450 U.S. 91 (1981). *See Toby G. Scammell*, 2014 SEC LEXIS 4193, at *23. The public interest factors include:

> the egregiousness of the [respondent]'s actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the [respondent]'s assurances against future violations, the [respondent]'s recognition of the wrongful nature of his conduct, and the likelihood that the [respondent]'s occupation will present opportunities for future violations.

*Steadman*, 603 F.2d at 1140 (quoting *SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978)). Other relevant factors include the degree of harm resulting from the violation[4] and the deterrent

---

[2] A collateral bar, or "industry-wide bar," is a bar that prevents an individual from participating in the securities industry in capacities in addition to those in which the person was participating at the time of his or her misconduct. *See Toby G. Scammell*, Advisers Act Release No. 3961, 2014 SEC LEXIS 4193, at *1 & n.1 (Oct. 29, 2014).

[3] In order to act willfully, Kirkland need only have intended to commit an act that resulted in a violation. *See Wonsover v. SEC*, 205 F.3d 408, 413-15 (D.C. Cir. 2000).

[4] *KPMG Peat Marwick LLP*, Exchange Act Release No. 43862, 2001 SEC LEXIS 98, at *100 (Jan. 19, 2001), *pet. denied*, 289 F.3d 109 (D.C. Cir. 2002).

effect of administrative sanctions.[5] The public interest inquiry "'is . . . flexible . . . and no one factor is dispositive.'" *Ralph Calabro*, Securities Act Release No. 9798, 2015 SEC LEXIS 2175, at *163 (May 29, 2015) (citation omitted).

Before imposing an industry-wide bar, an administrative law judge must determine, based on the evidence presented, "whether such a remedy is necessary or appropriate to protect investors and markets." *Ross Mandell*, Exchange Act Release No. 71668, 2014 SEC LEXIS 849, at *7 (Mar. 7, 2014) (internal quotation marks omitted). I must therefore "'review [Kirkland's] case on its own facts' to make findings regarding [his] fitness to participate in the industry in the barred capacities." *Id.* at *7-8 (quoting *McCarthy v. SEC*, 406 F.3d 179, 188 (2d Cir. 2005)). A decision to impose an industry-wide bar "should be grounded in specific 'findings regarding the protective interests to be served' by barring the respondent and the 'risk of future misconduct.'" *Id*. at *8 (quoting *McCarthy*, 406 F.3d at 189-90); *see John W. Lawton*, Advisers Act Release No. 3513, 2012 SEC LEXIS 3855, at *34-35 (Dec. 13, 2012).

Because "violating the antifraud provisions has especially serious implications for the public interest," *Marshall E. Melton*, 2003 SEC LEXIS 1767, at *30, "conduct that violates the antifraud provisions of the federal securities laws" should be "'subject to the severest of sanctions,'" *Daniel Imperato*, 2015 SEC LEXIS 1377, at *19 (quoting *Chris G. Gunderson*, Exchange Act Release No. 61234, 2009 WL 4981617, at *5 (Dec. 23, 2009)). As a result, unless a respondent presents contrary evidence, "ordinarily . . . it will be in the public interest to bar from participation in the securities industry a respondent" who has been "enjoined from violating antifraud provisions." *Id.* at *18 (internal quotation marks and citation omitted).

The facts show that imposing a full collateral bar is appropriate. For several reasons, Kirkland's conduct was egregious. First, Kirkland's conduct involved an on-going fraud that lasted at least two years. Using his own lies, Kirkland enticed at least ten investors to invest at least $800,000. As noted, misconduct involving fraud merits a serious penalty.

Second, because Kirkland acted as an investment adviser, he owed his victims a fiduciary duty. *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 17 (1979); *James C. Dawson*, Advisers Act Release No. 3057, 2010 SEC LEXIS 2561, at *8 (July 23, 2010). Kirkland did not honor that duty and instead perpetrated a fraud on his victims. Violating one's fiduciary duty is a serious matter and Kirkland's violation of his fiduciary duty shows that his conduct is egregious and that he is not suited to remain in the securities industry. *See Alfred Clay Ludlum, III*, Advisers Act Release No. 3628, 2013 SEC LEXIS 2024, at *26-28 (July 11, 2013); *James C. Dawson*, 2010 SEC LEXIS 2561, at *8-9, *15-16.

Kirkland's violations were recurrent and were not isolated. His misconduct involved at least ten investors and occurred over at least a two-year period of time.

---

5 *Schield Mgmt. Co.*, Exchange Act Release No. 53201, 2006 SEC LEXIS 195, at *35 & n.46 (Jan. 31, 2006); *see Guy P. Riordan*, Securities Act Release No. 9085, 2009 SEC LEXIS 4166, at *81 & n.107 (Dec. 11, 2009).

Kirkland acted with scienter. Because he had no basis for making the statements he made to investors, he necessarily knew he was lying to them. *See SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 424 (S.D.N.Y. 2007) ("Representing information as true while knowing it is not, recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter."), *aff'd sub nom.*, *SEC v. Altomare*, 300 F. App'x 70 (2d Cir. 2008). Kirkland thus knew that he could not guarantee investors' investments and he knew that neither TKO nor Westover would protect them from losses. He cannot credibly claim that he accidentally prepared documents that falsely represented that investments "would be further protected by 'the substantial credit worthiness of [Westover's] principals'" or that he accidentally included the name and biography of a "New York real estate developer/owner and identified him as the leader of the principals of Westover." Ex. C. at 5. It is self-evident that someone who is willing to lie to induce investors to invest is ill-suited to remain in the securities industry.

Kirkland has made no assurances against future violations. He has also not shown that he recognizes the wrongful nature of his conduct.

As to the question of whether it is likely that Kirkland's occupation will present opportunities for future violations, the Commission has held that "'the existence of a violation raises an inference that'" the acts in question will recur. *Tzemach David Netzer Korem*, 2013 SEC LEXIS 2155, at *23 n.50 (quoting *Geiger v. SEC*, 363 F.3d 481, 489 (D.C. Cir. 2004)). Kirkland's "occupation as an investment adviser presents opportunities for future illegal conduct in the securities industry." *John W. Lawton*, 2012 SEC LEXIS 3855, at *43. When combined with the absence of evidence that Kirkland recognizes the wrongfulness of his actions or has made any assurances against future violations, this factor shows that the Commission's interest in protecting the investing public weighs in favor of a collateral bar.

Finally, imposing a full collateral bar will serve as a general and specific deterrent.[6] It will deter Kirkland and will further the Commission's interest in deterring others from engaging in similar misconduct. Given the foregoing, I find that it is in the public interest to impose a permanent, direct, and collateral bar against Kirkland.[7]

---

6 General deterrence is relevant to, but not determinative of, the question of whether the public interest weighs in favor of imposing an industry bar. *See Peter Siris*, Exchange Act Release No. 71068, 2013 SEC LEXIS 3924, at *48 n.72 (Dec. 12, 2013); *see also PAZ Sec., Inc. v. SEC*, 494 F.3d 1059, 1066 (D.C. Cir. 2007); *Guy P. Riordan*, 2009 SEC LEXIS 4166, *81 & n.107.

7 The imposition of a full collateral bar is not impermissibly retroactive because a portion of the misconduct for which Kirkland was enjoined occurred after July 22, 2010, the effective date of the Dodd-Frank Wall Street Reform and Consumer Protection Act. *See* Pub. L. No. 111-203, §§ 4, 925(a), 124 Stat. 1376, 1390, 1850-51 (2010); *Koch v. SEC*, --- F.3d ---, 2015 WL 4216988, at *8-10 (D.C. Cir. July 14, 2015) (holding that the Commission cannot apply Dodd-Frank to bar a respondent from associating with municipal advisors and rating organizations based on conduct predating Dodd-Frank, because such an application is impermissibly retroactive).

## Order

Under the authority in Rule 250(b) of the Securities and Exchange Commission's Rules of Practice, the Division of Enforcement's Motion for Summary Disposition is GRANTED.

It is FURTHER ORDERED that, under Section 203(f) of the Investment Advisers Act of 1940, Stephen L. Kirkland is permanently BARRED from associating with a broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization.

This Initial Decision shall become effective in accordance with and subject to the provisions of Rule 360. *See* 17 C.F.R. § 201.360. Under that Rule, a party may file a petition for review of this Initial Decision within twenty-one days after service of the Initial Decision. A party may also file a motion to correct a manifest error of fact within ten days of the Initial Decision, pursuant to Rule 111. *See* 17 C.F.R. § 201.111. If a motion to correct a manifest error of fact is filed by a party, then a party shall have twenty-one days to file a petition for review from the date of the undersigned's order resolving such motion to correct a manifest error of fact.

The Initial Decision will not become final until the Commission enters an order of finality. The Commission will enter an order of finality unless a party files a petition for review or motion to correct a manifest error of fact or the Commission determines on its own initiative to review the Initial Decision as to a party. If any of these events occurs, the Initial Decision shall not become final as to that party.

____________________________
James E. Grimes
Administrative Law Judge