**EXHIBIT E**

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of Commerce and U.S. Customs and Border Protection ("CBP") (collectively the "United States"), defendant Alexander C. Cheng ("Cheng"), and relator J Squared, Inc. d/b/a University Loft Company ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.    Blue Furniture Solutions, LLC ("Blue Furniture") is a Florida limited liability company that imported wooden bedroom furniture from China and sold it for use in college apartments in the United States. Cheng was Blue Furniture's Chief Financial Officer and one of its two shareholders.

B.    On July 15, 2015, Relator filed a qui tam action in the United States District Court for the Western District of Texas captioned *United States ex rel. University Loft Company v. Blue Furniture Solutions, LLC et al.*, Case No. A-15-CV-588-LY, pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleged that Blue Furniture, Cheng, and others conspired to evade anti-dumping duties on wooden bedroom furniture imported from China. The United States intervened in the Civil Action on April 10, 2017 and filed its Complaint in Intervention on August 10, 2017.

C.    The United States contends that it has certain civil claims against Cheng arising from Blue Furniture's evasion of anti-dumping duties during the period from 2011 through 2015. The United States alleges that Cheng conspired to defraud the United

States by falsely identifying Blue Furniture's imports as not subject to anti-dumping duties, falsely describing its merchandise as items not subject to anti-dumping duties, and undervaluing merchandise of documents submitted to CBP. That conduct is referred to below as the "Covered Conduct."

      D.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorney's fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

### TERMS AND CONDITIONS

      1.      Cheng shall pay to the United States $90,000.00 ("Settlement Amount"), which constitutes restitution to the United States, by electronic transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of Texas. The Settlement Amount shall be paid as follows:

      A.      Within seven (7) days of the Effective Date of this Agreement, Cheng will make a payment to the United States in the amount of $10,000.00.

      B.      Over a period of five (5) years from the Effective Date of this Agreement, Cheng will pay the remaining $80,000.00 of the Settlement Amount, plus interest at five percent (5%) per annum, pursuant to a promissory note ("Note") in the form of Exhibit A that Cheng agrees to execute contemporaneously with this Agreement.

CHENG SETTLEMENT AGREEMENT      PAGE 2 OF 10
*U.S. ex rel. University Loft Co. v. Blue Furniture Solutions, LLC*
Case No. A-15-CV-588-LY (W.D. Tex.)

  C. Interest shall accrue on the unpaid settlement amount as indicated in the Note.  Collectively the Settlement Amount and interest received by the United States under the Note shall be referred to as the "Settlement Proceeds."

  D. To secure payment of the Settlement Proceeds and performance of his obligations under this Agreement and the Note, Cheng consents to final judgment in the amount of $4,679,987.19 under the False Claims Act, 31 U.S.C. § 3729, pursuant to a Final Judgment by Consent ("Consent Judgment") in the form of Exhibit B that Cheng agrees to execute contemporaneously with this Agreement.

  E. The United States will hold and not file the Consent Judgment while Cheng remains in compliance with the Agreement and Note.  If Cheng fails to make any payment required by this Agreement or the Note, he shall have five (5) business days from receipt of written notice of default (as provided by Paragraph 26 below) to pay the amount due in full.  If Cheng fails to pay the amount due in full within five (5) business days of receipt of written notice of default, the United States may file the Consent Judgment and take action to collect the judgment, less any amount Cheng has paid under the Agreement or Note.  Cheng agrees not to contest entry of the Consent Judgment and agrees immediately to pay the United States' reasonable costs of collection, including reasonable attorney's fees and expenses, incurred to file, enter, and collect the judgment.

  2. Conditioned upon the United States receiving the Settlement Proceeds from Cheng, the United States agrees that it shall pay to Relator by electronic funds

transfer 20 percent of each such payment received under the Agreement as soon as feasible after receipt of the payment.

3. Cheng shall pay $10,000 to Relator as a portion of Relator's expenses, attorney's fees, and costs as follows: $2,000 within seven (7) days of the Effective Date of this Agreement and four consecutive quarterly payments of $2,000 each, beginning on March 31, 2020.

4. Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon Cheng's full payment of the Settlement Amount as provided in the Agreement and Note, the United States releases Cheng from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon Cheng's full payment of the Settlement Amount as provided in the Agreement and Note, Relator, for itself and for its heirs, successors, attorneys, agents, and assigns, releases Cheng from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6. Notwithstanding the releases given in paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

      b.      Any criminal liability;

      c.      Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

      d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.      Any liability based upon obligations created by this Agreement; and

      f.      Any liability of individuals other than Cheng.

7.      Relator and its heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and its heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8.      Relator, for itself, and for its heirs, successors, attorneys, agents, and assigns, releases Cheng from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

9.      Cheng has provided sworn financial disclosure statements ("Financial Statements") to the United States, and the United States has relied on the accuracy and

CHENG SETTLEMENT AGREEMENT      PAGE 5 OF 10
*U.S. ex rel. University Loft Co. v. Blue Furniture Solutions, LLC*
Case No. A-15-CV-588-LY (W.D. Tex.)

completeness of those Financial Statements in reaching this Agreement. Cheng warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which Cheng had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Cheng on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $10,000.00 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Cheng previously undisclosed. Cheng agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

10. In the event that the United States, pursuant to Paragraph 9 (concerning disclosure of assets) above, opts to rescind this Agreement, Cheng agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 30 calendar days of written notification to Cheng that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on July 15, 2015.

11. Cheng waives and shall not assert any defenses Cheng may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the

Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

12.     Cheng fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Cheng has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13.     Cheng fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Cheng has asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

14.     Cheng agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement.  Cheng agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in his possession, custody, or control concerning any investigation of the Covered Conduct that he has undertaken, or that has been performed by another on his behalf.

15.     This Agreement is intended to be for the benefit of the Parties only.

16.     Upon receipt of the payment described in Paragraph 1.A, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal

pursuant to Rule 41(a)(1).  The Joint Stipulation of Dismissal shall provide that the action is being dismissed subject to the terms of this Agreement.

17. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Texas.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on Cheng's successors, transferees, heirs, and assigns.

24. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

25. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26. Any notices to Cheng required by this Agreement or the Note shall be sent by certified mail, return receipt requested, to

> Alexander C. Cheng
> 2425 Deherradora Ave
> Charlotte, NC 28208

with an email courtesy copy to

> Santosh Aravind
> Scott Douglas & McConnico
> 303 Colorado Street, Suite 2400
> Austin, TX 78701
> *saravind@scottdoug.com*

Cheng shall provide notice of any change of address to the United States Attorney's Office for the Western District of Texas within 14 days of such change.

27. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**EXHIBIT E**

THE UNITED STATES OF AMERICA

DATED: _____     BY: _____
                          Thomas A. Parnham, Jr.
                          Assistant United States Attorney
                          Western District of Texas

ALEXANDER C. CHENG

DATED: _____     BY: _____
                          Alexander C. Cheng

DATED: _____     BY: _____
                          Santosh Aravind
                          Scott Douglas & McConnico
                          Counsel for Defendant Alexander C. Cheng

J SQUARED, INC. D/B/A UNIVERSITY LOFT CO.

DATED: _____     BY: _____
                          William C. Potter
                          General Counsel

DATED: _____     BY: _____
                          Steve Smit
                          Graves Dougherty Hearon & Moody
                          Counsel for Relator J Squared, Inc.