# FXTRADE ZH LP

## DISCRETIONARY INVESTMENT MANAGEMENT AGREEMENT (NON-ERISA)

To:   Dragon Capital Group LLC
      ("General Partner")
      Attention: Mr. Alex Cheng

From: Xuejun (Mark) Zhang
      10711 Kristens Mare Dr
      Charlotte, NC 28277
      ("*Limited Partner*")

The undersigned (referring to all account holders jointly and severally, as trustees, corporate officers, custodians and/or any other authorized person(s) signing as or for the "*Limited Partner*" or "*Limited Partners*" as designated on the signature page of this Agreement) hereby employs your services, according to the following terms and conditions:

1. **Limited Partnership Objectives, Contribution and Pledge of Assets.**
The objective of the Limited Partnership is to effect further financing for Development Projects of the Partners at better than market terms. In order to assist in qualifying for financing; the Limited Partner hereby agrees to Pledge and Convey certain liquid and tangible assets in the following delineations as its Contribution to the Partnership:

   a.) Cash in the amount of: USD$700,000 (USD SEVEN HUNDREAD THOUSAND)

The General Partner hereby agrees to assume full liability for the financial and fiduciary oversight of the Contribution of the Limited Partner as provided for by the terms of this agreement.

2. **General Partner Discretionary Oversight Services on Investment Fund.** The Limited Partner hereby appoints General Partner, and General Partner hereby accepts the appointment, to be the Limited Partnership's investment General Partner and provide discretionary investment management services as to the investment account(s) established by the Limited Partner with General Partner (the "*Account*" whether one or more) in accordance with the terms and conditions hereinafter set forth. Throughout the term of this Agreement, General Partner shall have full discretion to supervise, manage, direct the distribution of any and all loan proceeds held in the Account, together with all additions, substitutions and alterations thereto, with full power and authority as agent and attorney-in-fact to purchase, sell, invest, reinvest, exchange, convert, and trade the loan proceeds in the Account, and perform any act incidental thereto, in any manner deemed appropriate and to place all orders for the purchase and sale of Account assets with or through brokers, dealers, or issuers selected by General Partner or as directed by the Limited Partner, as the case may be, all without prior consultation with the Limited Partner and all at such times as the General Partner deems appropriate (subject to any restrictions imposed by the Limited Partner in the Limited Partner Documentation, as defined in Section 2).

*[signatures: XZ  SC]*

3. **Applicable Investment Guidelines for Cash and Real Property Contribution of Limited Partner.** General Partner will manage and select investments for the Account in accordance with the investment policy substantially in the form attached hereto as <u>Exhibit A</u> and instructions, limitations and/or designations provided or established by the Limited Partner in writing and delivered to General Partner (the "*Limited Partner Documentation*"), which may be amended from time to time by the Limited Partner. The allowances extend to the utilization of the cash on accounts for the expressed purpose of demonstrating debt service capacity for any contemplated loans against the Real property. Additionally, the Real Property may not be encumbered except as a means of deriving further loan consideration. Limited Partner acknowledges and agrees that the Limited Partner is responsible for ensuring that the investment policy and other directives provided to General Partner are in accordance with applicable law. The Limited Partner represents that the Limited Partner Documentation, the information set forth in <u>Exhibits B and C</u> hereto, and any other written information provided to General Partner is accurate and complete, and the Limited Partner agrees that General Partner and its agents or designees may each rely on such information in performing their responsibilities hereunder. The Limited Partner acknowledges and understands that it shall be the responsibility of the Limited Partner to promptly advise General Partner of any changes in such Limited Partner Documentation or other written information provided by the Limited Partner to General Partner.

4. **Custody of Assets.** All transactions authorized by this Agreement shall be consummated by payment to or delivery by the Limited Partner or the Limited Partner's designated custodian of the Account (the "*Custodian*") of all cash and/or securities due to or from the Account. Instructions of General Partner to the Limited Partner or the Custodian with respect to asset transactions shall be made in writing (which shall include without limitation any reliable electronic form of instruction) or orally and confirmed in writing as soon as practicable thereafter, and General Partner shall instruct all brokers, dealers, or issuers executing orders on behalf of the Account to forward to the Limited Partner or the Custodian copies of notices of all transactions promptly after execution. The Limited Partner acknowledges and understands that only the Limited Partner and the Custodian will have direct or indirect possession or custody with respect to the assets held in the Account. The General Partner agrees to provide to the Limited Partner all necessary custodial information and authorization for the purposes of security clearance, Account reporting and all other investment advisory purposes, including distributions from the Account as instructed by General Partner.

5. **Allocation of Brokerage.** Where General Partner places orders for the execution of portfolio transactions for the Account, General Partner will obtain the best execution for orders of the Account in accordance with applicable law. General Partner may also allocate such transactions to such brokers and dealers, including affiliates of General Partner, for execution on such markets, at such prices and at such commission rates as in the good faith judgment of General Partner will be in the best interest of the Account, taking into consideration in the selection of such brokers and dealers not only the available prices and rates of brokerage commissions, but also other relevant factors (such as, without limitation, execution capabilities, research and other services provided by such brokers or dealers which are expected to enhance the general portfolio management capabilities of General Partner, and the value of an ongoing relationship of General Partner) without having to demonstrate that such factors are of a direct benefit to the Account.

*XZ  SC*

6. **<u>Limited Partner Representations and Acknowledgements.</u>** The Limited Partner represents and/or acknowledges that: (a) this Agreement does not violate any obligations by which the Limited Partner is otherwise bound and upon execution and delivery, this Agreement will be binding upon the Limited Partner in accordance with its terms; (b) the Limited Partner has reviewed the Limited Partner Documentation (if any) with a representative of General Partner; (c) the Limited Partner has delivered to General Partner, and from time to time hereafter promptly will deliver to General Partner, in writing, all of the information which the General Partner may require or reasonably request in order to perform its duties hereunder without violating or causing any violation of its fiduciary duties hereunder, or any provision of any applicable law, and promptly will notify General Partner, in writing, of any material change in the information so furnished to it; and (d) the Limited Partner is independent of and unrelated to General Partner and its affiliates.

7. **<u>General Partner Representations and Acknowledgements.</u>** General Partner represents and/or acknowledges that: (a) General Partner is registered or exempt from registration as an investment adviser with the Securities and Exchange Commission under the Investment Advisers Act of 1940; and (b) to the extent required by law, General Partner will treat as confidential any information obtained from or about the Limited Partner or the Limited Partner's Account through the performance of its obligations under this Agreement.

8. **<u>Non-exclusivity.</u>** It is understood that General Partner may perform investment advisory services for various Limited Partners. The Limited Partner agrees that General Partner may give advice and take action in the performance of its duties with respect to any of its other Limited Partners which may differ with respect to the Account so long as it is the policy of General Partner, to the extent practical, to allocate investment opportunities to the Account over a period of time on a fair and equitable basis relative to other Limited Partners. Nothing in this Agreement shall be deemed to confer upon General Partner any obligation to acquire for the Account a position in any security which General Partner or its directors, principals or employees may acquire for their own accounts or for the account of any other Limited Partner, if in the sole and absolute discretion of General Partner it is not, for any reason, practical or desirable to acquire a position in such security for the Account.

9. **<u>Limitation of Liability.</u>** In providing services under this Agreement, the Limited Partner acknowledges that except for negligence, willful misconduct or violation of applicable law, neither General Partner, nor its principals, directors, officers, employees or agents shall be liable for any damages, losses, expenses, or costs (including without limitation any attorneys' fees) (collectively a "*Loss*") arising out of or in connection with any acts or omissions or for any errors of judgment or use of discretion in managing the Account or for any Loss incurred by reason of any acts or omissions of any broker, custodian or other third party providing services, directly or indirectly, to the Account. The Limited Partner agrees to hold harmless and indemnify General Partner and its principals, directors, officers, employees or agents against any Loss which General Partner may incur if and to the extent such Loss is caused by the Limited Partner's or its agent's or designee's (other than General Partner) own gross negligence or willful misconduct or by any material inaccuracy or breach by the Limited Partner of any of its representations or acknowledgements hereunder. The Limited Partner understands that federal and/or state securities

laws give rights to the Limited Partner that may not be waived by this Agreement. This Section 9 shall survive the termination of this Agreement.

10. **Compensation.** The payment and computation of compensation due General Partner for rendering its services under this Agreement (the "*Fee*") shall be in accordance with General Partner's regularly published fee schedule in effect at the time the services contemplated herein are rendered. In the event the Fees payable hereunder are governed by General Partner's regularly published fee schedule (the "*Fee Schedule*"), the Limited Partner hereby acknowledges receipt of such Fee Schedule at the time of, or prior to, entering into this Agreement. The Limited Partner understands and agrees that the Fee Schedule may be amended from time to time by General Partner. In the event the Fee Schedule is amended, General Partner shall provide the Limited Partner with at least thirty (30) days' written notice prior to such amended Fee Schedule becoming effective as to the Account. All or a portion of the Fees paid to General Partner under this Agreement may be paid to one or more third parties, as determined by the General Partner, for services rendered in connection with the Account.

General Partner shall deliver to the Limited Partner and the Custodian (by mail, electronic medium, or any other reliable means agreed upon with the Limited Partner) within 5 days after each calendar month an invoice (the "*Fee Notice*") for the Fees earned by General Partner during the immediately preceding month. The Fee amount set forth in the Fee Notice shall be due and payable by the Limited Partner upon receipt.

In computing the market value of any asset held in the Account for billing purposes, each security listed on any national securities exchange shall be valued at the last sale price on the valuation date; but listed securities not traded on such date and any unlisted security regularly traded in the over-the-counter market shall be valued at the latest available bid price reflected by quotations furnished to General Partner by such source as it may deem appropriate. Any other asset shall be valued in such manner as shall be determined in good faith by General Partner to reflect its fair market value

11. **Account Reporting.** The General Partner shall instruct the Custodian to provide Limited Partner with such periodic Account reports as Limited Partner may reasonably request from time to time. General Partner shall provide to the Limited Partner periodic performance and Fee Notices in connection with the Account. The Limited Partner recognizes that dividends, capital gains, transfers and sales of securities may create a taxable event unless the Account is a tax-qualified or tax-exempt account. The Limited Partner also acknowledges that General Partner does not offer legal or tax advice and it is the separate responsibility of the Limited Partner to retain legal and tax professionals to the extent deemed necessary.

12. **Termination, Assignment and Amendment.** The Limited Partner acknowledges and understands that, unless otherwise agreed, this Agreement may be terminated by either party to this Agreement at any time upon ninety (90) days' prior written notice to the other party. Fees paid in advance will be prorated to the date of termination specified in the notice of termination and any unearned portion thereof will be refunded to the Limited Partner. No assignment (as defined in the Investment Advisers Act of 1940, as amended) of this Agreement by General Partner

*XZ  SC*

shall be effective without the Limited Partner's consent. Unless otherwise provided herein, any amendment of this Agreement shall require the written consent of both parties.

13. **Governing Law.** The Limited Partner understands that unless preempted by federal law, this Agreement shall be governed by the laws of the U.S. State of Delaware without giving effect to any conflict of laws, principle, doctrine or statute.

14. **Notices.** The Limited Partner understands that unless subsequent written notice is given, any notice, report or other written communication provided to a party shall be mailed to such party's address as stated on the signature page of this Agreement (or any exhibit thereof), and that General Partner may forward to its agents a copy of any written communication sent by the Limited Partner in connection with this Agreement. All notices and other communications contemplated by this Agreement shall be deemed duly given if provided in accordance with this Section 14.

15. **Severability.** If any part of this Agreement is determined to be illegal, invalid, or unenforceable, then such part will be considered severed from this Agreement and the remainder of the Agreement will continue in full force and effect.

16. **Counterparts.** This Agreement may be signed and executed in counterparts, each of which, when so executed and delivered, shall be deemed to be an original and all of which, when taken together, shall constitute one and the same signatory page of the Agreement.

17. **Entire Agreement.** This Agreement (and its accompanying exhibits) represents the entire agreement between the parties and expressly supersedes any prior written or oral agreement.

18. **Arbitration.** All controversies concerning (a) any transaction, (b) the construction, performance or breach of this Agreement, or (c) any other related matter which may arise between General Partner and the Limited Partner or its agents, shall be determined by arbitration conducted pursuant to the Federal Arbitration Act and the laws of the State of Delaware, before the American Arbitration Association. The Limited Partner understands that this arbitration clause does not constitute a waiver of the right to seek a judicial forum where such waiver is void under federal securities laws.

As or on behalf of the Limited Partner, I understand that, unless otherwise provided:

1. Arbitration is final and binding on the parties;

2. The parties are waiving their rights to seek remedies in court, including their right to a jury trial;

3. Pre-arbitration discovery is generally more limited than and different from court proceedings;

*XZ SC*

  4. The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or seek modification of rulings by the arbitrators is strictly limited; and

  5. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities or advisory industry.

Notwithstanding this Section 18, General Partner reserves the right to pursue all legal and equitable remedies that may be available to it. This Section 18 shall survive the termination of this Agreement.

  **AGREED TO AND EXECUTED this 25th day of   September   2019.**

**LIMITED PARTNER:**
**XUEJUN (MARK) ZHANG**

Signature: _____

Address to which notices will be sent:
10711 Kristens Mare Dr
Charlotte, NC 28277


**GENERAL PARTNER:**

**DRAGON CAPITAL GROUP LLC**

By: _____
Name:   Shumei Chen
Title:    *Member*

Address to which notices will be sent:
10612 Providence Rd, STE D-223
Charlotte, NC 28277

# FXTRADE ZH LP

Exhibit A

## INVESTMENT POLICY

Monies or assets (i) in accounts over which General Partner retains trading authority, and/or (ii) deposited in a custodial account of General Partner shall be invested in capital-protected transactions including, but not limited to, the following:

- Marketable equity and debt securities of issuers investment grade rated by S&P or Moody's;

- U.S. government obligations;

- Credit obligations of obligors investment grade rated by S&P or Moody's;

- Arbitrage, block trades, long-shorts and stock loans;

- Hedged derivative transactions, including futures;

- Commodities and fiat and crypto currencies;

- Investments in investment companies or investment funds which engage in trades of securities, derivative and commodities that meet the terms, conditions and limitations set forth herein; and

- Any other investment requested by Limited Partner.

# FXTRADE ZH LP

**Exhibit B**

**Name of Limited Partner:** Xuejun(Mark)Zhang

## QUALIFICATION STATEMENT

(a) Please indicate with an "X" the manner in which you qualify as an "accredited investor" pursuant to Regulation D promulgated under the Securities Act of 1933, as amended (the "Act"):

☒ (1) a natural person whose individual net worth[1] (or joint net worth with such person's spouse) exceeds US$1,000,000; or

☐ (2) a natural person who had an individual income[2] in excess of US$200,000 in each of the two most recent years and who reasonably expects to have an individual income in excess of US$200,000 in the current year or who had "joint income"[3] in excess of US$300,000 in each of the two most recent years and who reasonably expects to have joint income in excess of US$300,000 in the current year.

(b) Please indicate whether you are a "qualified purchaser" as defined under the Investment Company Act of 1940, as amended.

☒ Yes      ☐ No

*[signature]*

---

[1] For purposes of this item, "net worth" means the excess of total assets at fair market value, including home and personal property, over total liabilities, including mortgage debt.

[2] For purposes of this item, "individual income" means adjusted gross income as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any interest income received which is tax-exempt under Section 103 of the Internal Revenue Code of 1986 (the "Code"), (ii) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040), (iii) any deduction claimed for depletion under Section 611 et seq. of the Code, and (iv) any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to the provisions of Section 1202 of the Code prior to its repeal by the Tax Reform Act of 1986.

[3] For purposes of this item, "joint income" means adjusted gross income as reported for federal income tax purposes, including any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any interest income received which is tax-exempt under Section 103 of the Code, (ii) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040), (iii) any deduction claimed for depletion under Section 611 et seq. of the Code, and (iv) any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to the provisions of Section 1202 of the Code prior to its repeal by the Tax Reform Act of 1986.
Property of Dragon Capital Group LLC.                              Do Not Distribute or Copy

Doc ID: a5d314a60525923113c08e5a6bd912353c4d9347

# FXTRADE ZH LP

(c) Please answer questions 1-3 below:

    (1) Occupation of Limited Partner: __**Consultant**__

    (2) Name of employer: __**FODIS Consulting**__

    (3) Business address of Limited Partner:

    __**10711 Kristens Mare Dr, Charlotte, NC 28277**__

(d) Please respond to the following question:

No part of the funds used by the undersigned to acquire the Preferred Units constitutes assets of any "employee benefit plan" within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended, or other "benefit plan investor" (as defined in U.S. Department of Labor Reg. Section 2510.3-101 *et seq,* as amended) or assets allocated to any insurance company separate account or general account in which any such employee benefit plan or benefit plan investor (or related trust) has any interest.

    ☒ True     ☐ False

The undersigned hereby represents and warrants that all of the answers, statements and information set forth in this Qualification Statement are true and correct on the date hereof. The undersigned hereby agrees to provide such additional information as requested by the General Partner.

**IN WITNESS WHEREOF**, the undersigned has executed this Qualification Statement on this __25th__ day of September, 2019.

Limited Partner Name: __**XUEJUN (MARK) ZHANG**__
*(print or type)*

Signature: ___[signature]___



| | |
|---|---|
| **TITLE** | LP Agreement and Management agreement |
| **FILE NAME** | LP Agreement FXTRADE ZH.pdf and 1 other |
| **DOCUMENT ID** | a5d314a60525923113c08e5a6bd912353c4d9347 |
| **STATUS** | ● Completed |

## Document History

**SENT**  09 / 25 / 2019  23:07:26 UTC  Sent for signature to Mark Zhang (markzhangxj@gmail.com), Shumei Chen (mchenv3@gmail.Com) and Alex Cheng (alex@acgroupus.com) from alison@acgroupus.com
IP: 69.132.251.247

**VIEWED**  09 / 25 / 2019  23:41:21 UTC  Viewed by Mark Zhang (markzhangxj@gmail.com)
IP: 172.72.140.128

**VIEWED**  09 / 25 / 2019  23:54:13 UTC  Viewed by Shumei Chen (mchenv3@gmail.com)
IP: 45.56.152.148

**SIGNED**  09 / 25 / 2019  23:55:41 UTC  Signed by Shumei Chen (mchenv3@gmail.com)
IP: 45.56.152.148

**SIGNED**  09 / 25 / 2019  23:58:02 UTC  Signed by Mark Zhang (markzhangxj@gmail.com)
IP: 172.72.140.128

**VIEWED**  09 / 26 / 2019  00:09:52 UTC  Viewed by Alex Cheng (alex@acgroupus.com)
IP: 45.56.152.148



| | |
|---|---|
| **TITLE** | LP Agreement and Management agreement |
| **FILE NAME** | LP Agreement FXTRADE ZH.pdf and 1 other |
| **DOCUMENT ID** | a5d314a60525923113c08e5a6bd912353c4d9347 |
| **STATUS** | ● Completed |

## Document History

**SIGNED** **09 / 26 / 2019** Signed by Alex Cheng (alex@acgroupus.com)
00:13:42 UTC IP: 69.132.251.247

**COMPLETED** **09 / 26 / 2019** The document has been completed.
00:13:42 UTC