UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-CV-00154-FDW-DSC

| | |
|---|---|
| XUEJUN ZHANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| DRAGON CAPITAL GROUP, LLC *et al.*, ) | |
| ) | |
| Defendants. ) | |

THIS MATTER is before the Court on Defendant Stephen L. Kirkland's ("**Kirkland**") Motion to Dismiss, wherein Kirkland, proceeding *pro se*, moves this Court to dismiss Plaintiff's Complaint for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure (Doc. No. 12). Plaintiff filed his Memorandum in Opposition to Kirkland's Motion (Doc. No. 13) on May 18, 2021, and, after the completion of jurisdictional discovery, filed his Supplemental Memorandum in Opposition to Kirkland's Motion (Doc. No. 44) on October 21, 2021. Kirkland's Motion is now ripe for review. For the reasons set forth below, Kirkland's Motion to Dismiss (Doc. No. 12) is DENIED.

## I. BACKGROUND

Plaintiff, a resident of Mecklenburg County, North Carolina, filed this suit on April 9, 2021, alleging claims of fraud, negligent misrepresentation, civil conspiracy, breach of fiduciary duty, and piercing the corporate veil against several Defendants, including Kirkland. (Doc. No. 1). The following background provides a summary of allegations and causes of actions as set forth in Plaintiff's Complaint, Kirkland's Motion to Dismiss, and Plaintiff's response briefs.

Although Kirkland is a citizen and resident of Georgia and has never resided in North Carolina

1

(Doc. No. 12, p. 2), Kirkland solicited and conducted the alleged foreign currency exchange transactions ("**Forex**") trading scheme with Defendant Alexander C. Cheng ("**Cheng**"), a resident of Mecklenburg County, North Carolina (Doc. No. 1, p. 2), and Defendant FXTrade XH LP ("**FXTrade**"), the limited partnership established between Plaintiff and Defendant Dragon Capital Group, LLC ("**Dragon**"), of which Cheng is the principal, for almost two years. (Doc. No. 1, p. 7; Doc. No. 13, p. 5). During such time, Kirkland extensively communicated with Cheng and was aware of Plaintiff's potential investment in Defendant Premier Investments & Financial Services Group, LLC's ("**Premier**") Forex trade program. (Doc. No. 44, p. 3). Indeed, although Kirkland denies he had access, custody, or control of or to Premier's bank accounts, Kirkland appears to be Premier's sole manager, exercising complete domination and control of Premier. (Doc. No. 13, pp. 4-5).

On September 22, 2019, Kirkland provided Cheng a draft limited partnership agreement to be used in the formation of FXTrade. Id. Kirkland was sent FXTrade's information and registered address in Charlotte, North Carolina on September 25, 2019. Id. Moreover, Kirkland met with Plaintiff and Cheng at the 678 Korean BBQ Restaurant in Georgia on September 28, 2019, for the purpose of soliciting Plaintiff's investment. Id. at 4. Kirkland also held himself out as having "full power of Attorney to act on behalf of Premier", in order to induce Plaintiff's investment, and actively participated in the wire transfers of Plaintiff's investment into and out of North Carolina banks. Id. at 3-4. On October 3, 2019, Kirkland entered into a Trade Agreement on behalf of Premier, between Premier and FXTrade. (Doc. No. 13, p. 5). From the time of Plaintiff's initial investment with FXTrade in September 2019 through June 2020, Plaintiff received regular communications from Cheng, which Plaintiff believes were invented by Defendants, including Kirkland, purporting to show steady profits on the funds Plaintiff invested. (Doc. No. 1, p. 10). Specifically, on December 15, 2019, Kirkland sent a notice misrepresenting the status of Premier's investment fund directly to

2

FXTrade's Charlotte mailing address. (Doc. No. 13, p. 5). Thereafter, on March 25, 2020, Kirkland entered into a Collateralized Trade Funding Placement Agreement on behalf of Premier, between Premier and Dragon, wherein Kirkland submitted Premier to the exclusive jurisdiction of Mecklenburg County, North Carolina. Id. On June 17, 2020, after Plaintiff requested to withdraw a portion of his investment, Kirkland emailed Cheng stating that if Plaintiff deposited more money with Kirkland, Kirkland would "be able to provide a 2% hurdle rate… effect[ively] guarantee[ing] a 2% minimum performance per month on all new deposits". (Doc. No. 1, pp. 10-11). Finally, on August 17, 2020, Kirkland informed Plaintiff and Cheng that their investment with Premier had been completely lost in March 2020 and has since failed to return any of Plaintiff's investment. Id. at 11-12.

## II. STANDARD OF REVIEW

"When considering a motion to dismiss involving *pro se* parties, the court construes the pleadings liberally to ensure that valid claims do not fail merely for lack of legal specificity." Brown v. Charlotte Rentals LLC, No. 3:15-cv-0043-FDW-DCK, 2015 WL 4557368, at *2 (W.D.N.C. July 28, 2015) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). At the same time, however, the Court should not "assume the role of advocate for the pro se plaintiff." Gordon, 574 F.2d at 1151 (quotation omitted).

### A. Personal Jurisdiction

When a challenge to personal jurisdiction is addressed only on the basis of motion papers, supporting legal memoranda, and the relevant allegations of a complaint, "the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Under those circumstances, the court "must construe all relevant pleading allegations in the light most favorable

3

to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction". Id.

In cases where the defendant provides evidence which denies the facts essential for jurisdiction, the plaintiff must present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant presented evidence. Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp., 812 F. Supp. 2d 710, 716–17 (E.D.Va. July 13, 2011); Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp., 737 F. Supp. 925, 926 (W.D.Va. 1990). If the existence of jurisdiction turns on disputed factual questions, a court may resolve the challenge on the basis of an evidentiary hearing, or, when a *prima facie* demonstration of personal jurisdiction has been made, it can proceed "as if it has personal jurisdiction over this matter, although factual determinations to the contrary may be made at trial". Pinpoint IT, 812 F. Supp. 2d at 717 (citing 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.31 (3d ed. 2011)). Regardless, the plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 n. 5 (4th Cir. 2005).

The determination of whether jurisdiction is appropriate depends on the facts and circumstances of each case. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478–79, 485–86 (1985). The court engages in a two-part inquiry when determining whether its exercise of personal jurisdiction over a given defendant is proper. The first, or statutory, part requires the assertion of personal jurisdiction under North Carolina's long-arm statute. The second, or constitutional, part requires the exercise of personal jurisdiction comply with due process. Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Courts have

historically construed North Carolina's long-arm statute to be coextensive with the Due Process Clause. This construction collapses the statutory and constitutional requirements into a single inquiry whether the non-resident defendant has such "minimum contacts" with the forum state that exercising jurisdiction over it does not offend "traditional notions of fair play and substantial justice." See Nolan, 259 F.3d at 215 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of long-arm jurisdiction over a defendant: general or specific. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984). A court may exercise general personal jurisdiction over defendants who have "continuous and systematic" contacts with the forum state regardless of where the relevant conduct occurs. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n. 15 (4th Cir. 2009). A court may exercise specific personal jurisdiction, on the other hand, when the cause of action arises from or is related to the defendant's contacts with the forum. Cambridge Homes of N. Carolina, LP v. Hyundai Const., Inc., 670 S.E.2d 290, 295 (N.C. App. 2008). The court considers several factors in deciding whether specific jurisdiction exists, including: ""(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable"". Id. (quoting Woods Intern., Inc. v. McRoy, 436 F. Supp. 2d 744, 748–49 (M.D.N.C. 2006)).

**B. Venue**

Venue is appropriate in "a judicial district in which any defendant resides, . . . in which a substantial part of the events or omission giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated". 28 U.S.C. § 1391 (2016). Under Federal

5

Case 3:21-cv-00154-FDW-DSC   Document 45   Filed 11/03/21   Page 5 of 14

Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper venue. When a 12(b)(3) motion to dismiss is filed, the plaintiff then bears the burden to "establish that venue is proper in the judicial district in which the plaintiff has brought the action". Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 526 (M.D.N.C.1996). If the court finds venue to be improper, the court shall dismiss or, in the interest of justice, transfer the case to the district or division in which the case could have been brought. 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court". White v. Wal-Mart Distribution Center, No. 3:08-cv-543-FDW, 2009 WL 275835, at *1 (W.D.N.C. Feb. 4, 2009) (citation omitted).

### III.  ANALYSIS

#### A. Personal Jurisdiction

In his Motion to Dismiss, Kirkland argues that this Court lacks both general and specific personal jurisdiction over him. (Doc. No. 12, pp. 3-11). Kirkland asserts there is no general jurisdiction because Kirkland is a citizen and resident of Georgia and has never resided in North Carolina. Id. Kirkland also asserts there is no specific personal jurisdiction because he does not have minimum contacts with North Carolina and the exercise of personal jurisdiction over Kirkland would be unreasonable. Id. Because Plaintiff does not allege or argue this Court's exercise of general personal jurisdiction over Kirkland is appropriate, this analysis is limited to the issue of specific personal jurisdiction.

i. Specific Personal Jurisdiction

First, the Court considers whether Kirkland has purposefully availed himself of the privilege of conducting business in North Carolina. The Fourth Circuit Court of Appeals has identified eight (8) non-exclusive factors to consider in determining whether a defendant has purposely availed

himself of the privilege of conducting business in a state: (1) whether the defendant maintained offices or agents in the state; (2) whether the defendant maintained property in the state; (3) whether the defendant reached into the state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the state; (5) whether a choice of law clause selects the law of the state; (6) whether the defendant made in-person contact with a resident of the state regarding the business relationship; (7) whether the relevant contracts required performance of duties in the state; and (8) the nature, quality, and extent of the parties' communications about the business being transacted. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009); Sneha Media & Entm't, LLC v. Associated Broad Co., 911 F.3d 192, 198-99 (4th Cir. 2018).

In his Motion to Dismiss, Kirkland asserts he has not sought to provide any goods or services to North Carolina, he operates his office from Georgia, he does not generate any revenues from North Carolina, and his "limited involvement, in the alleged actions and/or omissions listed in the complaint [were] strictly as a Georgia based individual operating under a Power of Attorney from Premier Investments and Financial Services Group, LLC (Premier); which is a company organized and exiting in the Commonwealth of Puerto Rico". (Doc. No. 12, p. 3). Contradictory to Kirkland's assertions, however, Plaintiff's Complaint, Kirkland's responses to Jurisdictional Discovery, and Plaintiff's response briefs evidence that Kirkland purposefully availed himself of the privilege of conducting business in North Carolina.

In this case, only two of the factors, the first and second, weigh against a finding of purposeful availment because Kirkland does not, and did not, maintain offices or agents or maintain property in the state of North Carolina. The remaining factors all support a finding that Kirkland purposefully availed himself of the privilege of conducting business in the state.

7

For almost two years, Kirkland communicated with Plaintiff and Cheng, via text message, e-mail, phone conversations, and in-person meetings for the purpose of soliciting and conducting an alleged Forex trading scheme with FXTrade. (Doc. No. 13, p. 5; Doc. No. 44, p. 3). Kirkland provided to Cheng the draft limited partnership agreement to be used in the formation of FXTrade, met with Plaintiff and Cheng at 678 Korean BBQ Restaurant in Georgia on September 28, 2019, for the purpose of soliciting Plaintiff's investment, held himself out as having "full power [sic] of Attorney to act on behalf of Premier" in order to induce Plaintiff's investment, and actively participated in the wire transfers of Plaintiff's investment into and out of North Carolina banks. (Doc. No. 13, pp. 4-5; Doc. No. 44, pp. 3-4). Moreover, from the time of Plaintiff's initial investment with FXTrade in September 2019 through June 2020, Plaintiff received regular communications from Cheng, which Plaintiff believes were invented by Defendants, including Kirkland, purporting to show steady profits on the funds Plaintiff Invested. (Doc. No. 1, p. 10). Notably, on December 15, 2019, Kirkland sent a notice misrepresenting the status of Premier's investment fund directly to FXTrade's Charlotte mailing address. (Doc. No. 13, p. 5). Further, on June 17, 2020, after Plaintiff requested to withdraw a portion of his investment, Kirkland emailed Cheng stating that if Plaintiff deposited more money with Kirkland, Kirkland would "be able to provide a 2% hurdle rate… effect[ively] guarantee[ing] a 2% minimum performance per month on all new deposits", again for the purposes of soliciting Plaintiff's investment. (Doc. No. 1, pp. 10-11).

Based on the foregoing, Kirkland undoubtedly reached into the state to solicit and initiate business, deliberately engaged in significant and long-term business activities in the state, and made in-person contact with residents of the state regarding the business relationship. Thus, the third, fourth, and sixth factors support a finding of purposeful availment. Similarly, the eighth factor, the nature, quality, and extent of the parties' communications about the business being transacted, also

favors a finding that Kirkland purposefully availed himself of the privilege of conducting business in North Carolina.

Moreover, on October 3, 2019, Kirkland entered into a Trade Agreement, on behalf of Premier, between Premier and FXTrade (Doc. No. 13, p. 5), and thereafter, on March 25, 2020, entered into a Collateralized Trade Funding Placement Agreement, on behalf of Premier, between Premier and Dragon.  Id.  Both agreements contemplate the transfer and investment of North Carolina funds with Premier and include notice provisions identifying FXTrade's and Dragon's notice addresses in Charlotte, North Carolina.  Although the Trade Agreement selects the laws of Nevada, which the Court notes neither party discusses, the Collateralized Trade Funding Placement Agreement's choice of law provision selects the laws of North Carolina.  (Doc. No. 1-11, pp. 4-5).  Further, Kirkland, as the authorized signer of Premier, irrevocably submitted Premier to the exclusive jurisdiction of Mecklenburg County, North Carolina in the Collateralized Trade Funding Placement Agreement.  Id.  Accordingly, the relevant contracts required performance of duties in North Carolina and the Collateralized Trade Funding Placement Agreement's choice of law selects the laws of the state of North Carolina.  Therefore, the fifth and seventh factors also support this Court's exercise of personal jurisdiction over Kirkland.

In his Motion to Dismiss, Kirkland cites Bell Helicopter Textron, Inc. v. Heliqwest Intern. Ltd., 385 F.3d 1291, 1296 (10th Cir. 2004) (quoting Burger King, 471 U.S. at 475) as finding, "th[e] requirement of 'purposeful availment' for purposes of specific jurisdiction precludes personal jurisdiction as the result of 'random, fortuitous, or attenuated contacts'".  The Court agrees with the Tenth Circuit, and, based on the record, accordingly finds that Kirkland has purposefully availed himself of the privileges of conducting business in the state of North Carolina, as his significant contacts with North Carolina have been anything but random, fortuitous, or

9

attenuated.

Next, the Court examines whether Plaintiff's claims arise from Kirkland's activities within North Carolina. The Court finds Plaintiff's claims, which are based on Kirkland's alleged fraud, clearly arise from Kirkland's extensive communications with Plaintiff and Cheng for the purpose of soliciting Plaintiff's investment and Kirkland's participation in several transactions made in and out of the State of North Carolina, including Kirkland's failure to return such funds.

Finally, the Court considers whether the exercise of personal jurisdiction over Kirkland is constitutionally reasonable. Based on Kirkland's continuous communication with Plaintiff and Cheng and Kirkland's active participation in soliciting investment funds from Plaintiff, Kirkland cannot reasonably argue that this Court's exercise of personal jurisdiction over him was not anticipated. See World-Wide Volkswagen Corp. v. Wooden, 444 U.S. 286, 297 (1980) ("the foreseeability that is critical to due process analysis… is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"). Additionally, as principal of Premier, Kirkland has already agreed to the exclusive jurisdiction of North Carolina's courts in the Collateralized Trade Funding Agreement. See Doc. No. 1-11, pp. 4-5. Accordingly, the Court finds its exercise of personal jurisdiction over Kirkland does not offend the traditional notions of fair play and substantial justice and is constitutionally reasonable.

      ii. Specific Jurisdiction Under the Conspiracy Theory

Plaintiff also asserts specific jurisdiction is appropriate here under the conspiracy theory. (Doc. No. 13, pp. 9-10). Because the Court has already determined it has specific personal jurisdiction over Kirkland, it is not necessary to determine whether the Court also has jurisdiction under the conspiracy theory.

**B. Venue**

10

Case 3:21-cv-00154-FDW-DSC   Document 45   Filed 11/03/21   Page 10 of 14

Kirkland also moves this Court to dismiss Plaintiff's Complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1391. 28 U.S.C. § 1391(b) permits a civil action to be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Where a plaintiff files an action in the wrong district, 28 U.S.C. § 1406(a) requires the court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought". The Court notes that Plaintiff has failed in both its initial Opposition Memorandum (Doc. No. 13) and its Supplemental Opposition Memorandum (Doc. No. 44) to discuss whether venue is proper under 28 U.S.C. § 1391; Plaintiff does, however, assert venue properly lies in this Court, because "a substantial part of the events or omissions giving rise to the claims alleged in [Plaintiff's] Complaint [sic] occurred and have a direct effect in this District" in his Complaint. (Doc. No. 1, p. 2).

In support of his Motion, Kirkland asserts:

> Venue is also improper under subsection (2), because a 'substantial part of the events or omissions giving rise to the claim' did not occur in the District of North Carolina. Plaintiff is arguing that venue is proper in North Carolina because it felt economic harm there. Case action in North Carolina would impose a significant burden on Mr. Kirkland[.] Accordingly, venue is not proper…

(Doc. No. 12, p. 12). For the reasons this Court determined it has personal jurisdiction over Kirkland in this matter, the Court similarly agrees with Plaintiff regarding venue and finds that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Accordingly, this Court finds that venue is proper under 28 U.S.C. § 1391(b)(2) and dismissal based on improper venue is not appropriate.

11

Moreover, although Kirkland did not move the Court to transfer this case to another district pursuant to 28 U.S.C. § 1406 or 28 U.S.C. § 1404, the Court nonetheless finds that the interest of justice does not warrant transfer of this matter to a different venue. 28 U.S.C. § 1404 provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought". 28 U.S.C. § 1404(a).

To determine whether a case should be transferred for the convenience of parties, witnesses, and in the interest of justice, this Court must exercise its own discretion and apply a balancing test in deciding whether transfer is appropriate. Liesman v. Weisberg, 2018 WL 342691, *3 (W.D.N.C. 2018) (citing Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93 (W.D.N.C. 1990)). The factors to be considered include:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view by the jury;
6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;
9. The administrative difficulties of court congestion;
10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with state law that must govern the action; and
11. The avoidance of unnecessary problems with conflict of laws.

Id. The court must analyze the eleven factors based on quality, not just quantity, and, in most cases, the plaintiff's choice of forum should be given significant weight and should not be disturbed unless the balance is strongly in favor of transfer. Id. (citing Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984)).

Here, four factors weigh heavily against transfer. The first factor, Plaintiff's initial choice of

forum, clearly weighs against transfer because Plaintiff filed this action in the Western District of North Carolina. (Doc. No. 1). The catch-all eighth factor, other practical problems that make a trial easy, expeditious, and inexpensive, also weighs against transfer because this case involves several parties, including Plaintiff, Cheng, FXTrade, and Dragon, who are all residents of, or have a principal place of business in, Mecklenburg County, North Carolina. (Doc. No. 1, pp. 1-2). Thus, four of the six named parties in this action reside or are doing business in Mecklenburg County, North Carolina. Similarly, the third and fourth factors also weigh against transfer, as the availability of evidence and witnesses will likely be more accessible and/or available where a majority of the parties reside.

Of the remaining seven factors, six factors favor neither party. The second factor, the residence of the parties, favors neither party as Plaintiff resides in Mecklenburg County, North Carolina (Doc. No. 1, p. 1), and Kirkland resides in the state of Georgia (Doc. No. 12, p. 2). Further, Plaintiff and Kirkland have failed to argue why the fifth, seventh, ninth, tenth, and eleventh factors would favor either party, and the Court sees no apparent reason why these factors would not be neutral.

Finally, the sixth factor, the enforceability of a judgment, if obtained, appears to support transfer because Kirkland resides in the state of Georgia. Id. Although this factor weighs in favor of transfer, the Court cannot ignore the significant factors weighing against transfer of this case, including Plaintiff's initial choice of forum. Accordingly, the Court finds that transfer of this case is not in the interest of justice and DENIES Defendant's Motion to Dismiss (Doc. No. 12).

## IV.     CONCLUSION

IT IS THEREFORE ORDERED that Defendant Stephen L. Kirkland's Motion to Dismiss (Doc. No. 12) is DENIED.

IT IS SO ORDERED.

13

Signed: November 3, 2021

*Frank D. Whitney*
Frank D. Whitney
United States District Judge

14